REVISED APRIL 24, 2008

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 27, 2008

Charles R. Fulbruge III
Clerk

No. 06-51670

ROARK & HARDEE LP, doing business as Warehouse Saloon & Billiards;
PUB DRAUGHT INC., doing business as Lovejoys Tap Room & Brewery;
JOSEPH CHIP TAIT; GMC INVESTMENT INC, doing business as Ego's;
CANARY ROOST INC; CANARAY HUT INC; GAIL E JOHNSON; KEEP
AUSTIN FREE PAC; TONY SIRGO; EDWARD CHECK; BILL HARDEE

Plaintiffs - Appellees

v.

CITY OF AUSTIN

Defendant - Appellant

_____

Consolidated with

No. 07-50441

ROARK & HARDEE LP, doing business as Warehouse Saloon & Billiards;
PUB DRAUGHT INC., doing business as Lovejoys Tap Room & Brewery;
JOSEPH CHIP TAIT; KEEP AUSTIN FREE PAC; TONY SIRGO; EDWARD
CHECK; BILL HARDEE

Plaintiffs - Appellants

v.

CITY OF AUSTIN

Defendant - Appellee

Appeals from the United States District Court
for the Western District of Texas, Austin
USDC No. 1:05-CV-837

Before KING, DeMOSS, and SOUTHWICK, Circuit Judges.

KING, Circuit Judge:

Plaintiffs are owners of stand-alone bars in Austin, Texas. They filed this action against the City of Austin seeking a declaratory judgment and injunctive relief relating to the enforcement of Austin's ordinance prohibiting smoking in enclosed public places, including bars, restaurants, and workplaces. The district court declared the "necessary steps" provision of the ordinance unconstitutionally vague on its face and permanently enjoined the City of Austin from enforcing it. The City of Austin appeals the district court's judgment and injunction, arguing that: (1) the case is nonjusticiable because plaintiffs lack standing and their claims are not ripe; (2) the "necessary steps" provision is not unconstitutionally vague; and (3) the district court abused its discretion in permanently enjoining the enforcement of the "necessary steps" provision. Some plaintiffs have also appealed the district court's denial of their motion for attorneys' fees. Plaintiffs' appeal has been consolidated with the City of Austin's appeal.

We REVERSE that portion of the district court's judgment declaring the "necessary steps" provision of the ordinance unconstitutionally vague, VACATE the provision of the permanent injunction enjoining enforcement of said provision, and otherwise AFFIRM the judgment. We also AFFIRM the district court's denial of attorneys' fees.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On May 7, 2005, the citizens of Austin, Texas adopted the "Smoking in Public Places" ordinance (the "ordinance") by way of a ballot initiative.[1] The purpose of the ordinance is to protect persons in public places and employees in their occupational environments from second-hand smoke. The ordinance took effect on September 1, 2005, and its principal goal is to prohibit smoking in all "public place[s]" within the City of Austin (the "City"). AUSTIN, TEX., CODE ch. 10-6.

The ordinance defines "public place" broadly to include any "enclosed area to which the public is invited or in which the public is permitted."[2] Id. § 10-6-1(6). This definition includes bars and restaurants and is subject to few exceptions. See § 10-6-3. The ordinance expands the City's prior smoking ordinance, which gave those bars and restaurants with substantial revenue from the sale of alcoholic beverages the option of obtaining a permit to allow smoking. The new ordinance abolishes this permit option.

---

[1] As the district court pointed out, the fact that the ordinance was enacted via the voter initiative process placed the City in an unusual posture. The City Charter provides that an ordinance adopted via initiative cannot be amended or repealed until it has been in effect for two years. AUSTIN CITY CHARTER, art. IV, § 6. Therefore, the City is in the position of defending the ordinance "as is" even though the City did not draft or enact it.

[2] The full definition states:

> PUBLIC PLACE means an enclosed area to which the public is invited or in which the public is permitted, including but not limited to, banks, bars, educational facilities, health care facilities, laundromats, public transportation facilities, reception areas, restaurants, retail food production and marketing establishments, retail service establishments, retail stores, shopping malls, sports arenas, theaters, and waiting rooms. A private residence is not a "public place" unless it is used as a child care, adult day care, or health care facility.

§ 10-6-1(6).

A violation of the ordinance is a Class C misdemeanor punishable by a fine, not to exceed $2,000, or by revocation or suspension of the license or permit of a violating establishment by the city manager.[3]  § 10-6-11(A)–(B).  An individual violates the ordinance by smoking in a public place, § 10-6-2(A), smoking in a building owned or operated by the City, § 10-6-2(B), or smoking within fifteen feet of an entrance or openable window of a building in which smoking is prohibited, § 10-6-2(D).  In addition to the restrictions placed on individuals, the ordinance provides that an owner or operator of a public place violates the ordinance if he or she "fails to take necessary steps to prevent or stop another person from smoking in an enclosed area in a public place." § 10-6-2(E) (emphasis added).  Certain steps—including posting "no smoking" signs and removing ashtrays—are explicitly set out in the ordinance.  § 10-6-8.

Shortly after the ordinance took effect, the following plaintiffs (collectively, "Plaintiffs") filed suit in state court challenging the constitutionality of the ordinance and seeking a temporary restraining order and a declaratory judgment: (1) three owners of stand-alone bars in the City—Bill Hardee; Joseph Chip Tait; and Gail E. Johnson; (2) Hardee's stand-alone bar—Roark and Hardee L.P., doing business as Warehouse Saloon and Billiards; (3) Tait's stand-

---

[3] The penalty provision provides:

VIOLATION AND PENALTY

(A)     A person who violates the provisions of this chapter commits a Class C misdemeanor, punishable . . . by a fine not to exceed $2,000.  A culpable mental state is not required for a violation of this chapter, and need not be proved.

(B)     The city manager may suspend or revoke a permit or license issued to the operator of a public place or workplace where a violation of this chapter occurs.

(C)     Each day an offense occurs is a separate violation.

§ 10-6-11.

alone bar—Pub Draught Inc., doing business as Lovejoys Tap Room and Brewery; (4) Johnson's stand-alone bars— GMC Investment Inc., doing business as Ego's; Canary Roost Inc.; and Canary Hut Inc.; (5) an organization of bars fighting the citizen initiative, KEEP AUSTIN FREE PAC; and (6) a couple of concerned citizens, Tony Sirgo and Edward Check.[4] Plaintiffs alleged that the ordinance violated the First, Fourth, and Fourteenth Amendments, the Supremacy Clause, a number of federal statutes, as well as the Texas State Constitution, Texas statutes, and the Austin City Charter. The City subsequently removed the case to federal district court.

On October 11, 2005, the district court held an evidentiary hearing on Plaintiffs' motion for a preliminary injunction. Plaintiffs' primary attack challenged the ordinance as "unconstitutionally vague on its face because it is so indefinite that it does not give fair notice as to what conduct is prohibited and lacks explicit standards for enforcement." Roark & Hardee L.P. v. City of Austin, 394 F. Supp. 2d 911, 916 (W.D. Tex. 2005). The district court ruled that Plaintiffs did not have a likelihood of success on the merits with regard to their vagueness, First Amendment, or overbreadth challenges. Id. at 916–19. However, the district court did enjoin two aspects of the penalty section of the ordinance. First, the district court concluded that the provision of the ordinance allowing the city manager to suspend or revoke the licenses or permits of "public places" violated the Due Process Clause of the Fourteenth Amendment and enjoined that provision to the extent that the City did not provide "expeditious judicial review."[5] Id. at 921. Second, the district court enjoined the City from

---

[4] When the suit was initiated, more plaintiffs were joined, but by the time of the trial and judgment, Plaintiffs, listed above, were the only ones remaining.

[5] The only type of permits or licenses the City Manager has authority to suspend are those issued by the City. Roark & Hardee L.P., 394 F. Supp. 2d at 921 n.11.

seeking fines of more than $500 under § 10-6-11, so that the ordinance was in compliance with Texas Penal Code § 6.02(f).[6]  Id. at 919–20 & n.9.

This preliminary injunction hearing was followed by a trial on the merits almost a year later on August 17, 2006.  By that time, the posture of the litigation had undergone a significant change.  The City had sent notices of violation and filed charges, which were still pending in municipal court, against two Plaintiff bar owners, Bill Hardee and Gail E. Johnson, for failing to take the "necessary steps" to prevent or stop another person from smoking in their bars, Roark and Hardee L.P., doing business as Warehouse Saloon and Billiards, Canary Hut, and Canary Roost.  The remaining Plaintiff owners and bars, Joseph Chip Tait; Pub Draught, Inc., doing business as Lovejoys Tap Room and Brewery; and GMC Investment Inc., doing business as Ego's, had not been cited.

At trial, Plaintiffs focused their attack on the words "necessary steps" in § 10-6-2(E) of the ordinance.  The City presented evidence that since the ordinance's passage, the City's Health and Human Services Department, the department charged under the statute with enforcement, see § 10-6-10(D), had enacted two sets of guidelines to provide clarification of the "necessary steps" provision.  The first set of guidelines provided: "Necessary steps include no smoking signs, absence of ash trays, asking the patron to stop smoking, asking the patron to leave the establishment if they refuse to stop smoking and following your standard business practices for enforcing house rules."  After receiving requests for more clarification, the second set of guidelines was released, which added the step of refusing service to a person who is smoking.[7]

---

[6] Section 6.02(f) was enacted at the same time as the ordinance and provides that a municipal ordinance "may not dispense with the requirement of a culpable mental state if the offense is punishable by a fine exceeding [$500]."  TEX. PEN. CODE § 6.02(f).

[7] The second set of guidelines issued to Plaintiff bar owners on March 9, 2006, state:

SMOKING IN PUBLIC PLACES ORDINANCE No. 050303-05.  Frequently

The district court found that the issuance of these two additional sets of guidelines weighed in favor of finding the ordinance vague. Roark & Hardee L.P. v. City of Austin, No. A-05-CA-837-SS, 2006 WL 2854399, at *4 (W.D. Tex. Oct. 4, 2006) ("The fact that the guidelines regarding 'necessary steps' are subject to change over time indicates that the term 'necessary steps' is vague and is not controlled by any discernible, explicit standard."). What the district court found "[e]ven more troubling" than the guidelines issued by the City was that "the five steps under the guidelines are not exclusive and that following all of the guidelines does not create a safe harbor from liability for business owners and operators." Id. The district court held that the City could not provide "definitive guidance to business owners and operators about how they might avoid liability under the ordinance" or the precise actions required of business owners to satisfy the "necessary steps" standard and avoid prosecution. Id. at *5. Because the City had not provided business owners with clear guidance beyond the two actions specifically mentioned in the ordinance—posting no smoking signs and removing all ashtrays—the district court found the "necessary steps" provision of the ordinance facially vague and consequently unconstitutional.[8] Id. at *5–6.

---

Asked Questions.

After receiving requests for clarification, the City issued "further guidance" to business owner/operators which provided a "progressive enforcement process" for businesses to comply with the ordinance:

> 1. Post no-smoking signs and remove all ashtrays.
> 2. Verbally ask a patron who is smoking to extinguish the cigarette, cigar, smoking apparatus, etc. (Sign interpretation or in written form for the hearing impaired)
> 3. Refuse service to a person who is smoking.
> 4. Verbally ask anyone smoking to leave the premises. (Sign interpretation or in written form for the hearing impaired)
> 5. Apply standard business procedures in the same manner for violations of house rules or local ordinances or state laws.

[8] In addition, the district court addressed and denied Plaintiffs' other claims, which have not been raised on appeal. Specifically, the district court rejected Plaintiffs': (1) allegations

After the trial, the district court entered a judgment granting Plaintiffs a permanent injunction in three respects: (1) enjoining the City from enforcing the "necessary steps" provision against owners and operators of public places beyond the two steps of posting no smoking signs and removing ashtrays; (2) enjoining the City from suspending or revoking any city permits or licenses without providing "expeditious judicial review"; and (3) enjoining the City from imposing fines under the ordinance that violate Texas Penal Code § 6.02(f) by exceeding $500. Id. at *10. Following entry of the judgment, Plaintiffs sought an award of attorneys' fees pursuant to 28 U.S.C. § 1988, as a "prevailing party" in the litigation. The district court denied the motion. The City filed a timely notice of appeal challenging the district court's grant of permanent injunctive relief. Subsequently, a few Plaintiffs—Roark and Hardee L.P., doing business as Warehouse Saloon & Billiards; Pub Draught Inc., doing business as Lovejoys Tap Room and Brewery; Joseph Chip Tait; KEEP AUSTIN FREE PAC; Tony Sirgo; Edward Check; and Bill Hardee—filed a cross-appeal arguing that the district court abused its discretion in denying the motion for attorneys' fees.

## II. DISCUSSION

### A. Standing and Ripeness

The City first argues that this case is nonjusticiable because Plaintiffs lack standing and their claims are not ripe for adjudication. Thus, before considering the merits of this appeal, we must answer the threshold question whether Plaintiffs "present[] an 'actual controversy,' a requirement imposed by Art. III of the Constitution and the express terms of the Federal Declaratory Judgment

---

that the terms "smoking" and "smoking accessory" in the ordinance were vague, id. at *6; (2) argument that their equal protection rights had been violated because the City admittedly enforced the ordinance against businesses but not against individuals, id. at *7; and (3) First Amendment and overbreadth claims, id. at *8. Finally, the district court found "that any of Plaintiffs' remaining claims for relief not specifically addressed herein fail as a matter of law." Id. at *9.

Act, 28 U.S.C. § 2201." Steffel v. Thompson, 415 U.S. 452, 458 (1974). The many doctrines that have fleshed out that "actual controversy" requirement—standing, mootness, ripeness, political question, and the like—are "founded in concern about the proper—and properly limited—role of the courts in a democratic society." Allen v. Wright, 468 U.S. 737, 750 (1984) (quoting Warth v. Seldin, 422 U.S. 490, 498 (1975)). These "doctrines state fundamental limits on federal judicial power in our system of government." Id. As such, we review all justiciability issues, including standing and ripeness, de novo. Ctr. for Individual Freedom v. Carmouche, 449 F.3d 655, 659 (5th Cir. 2006) (citing Bissonet Invs., L.L.C. v. Quinlan, 320 F.3d 520, 522 (5th Cir. 2003); Sample v. Morrison, 406 F.3d 310, 312 (5th Cir. 2005)).

The "essence" of standing is "whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." Warth, 422 U.S. at 498. In order to have standing, a plaintiff must "allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." Allen, 468 U.S. at 751 (citing Valley Forge Christian College v. Ams. United for Separation of Church & State, Inc., 454 U.S. 464, 472 (1982)). Although the question of standing is one of degree and is "not discernible by any precise test," Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 297 (1979), federal courts have established the following elements that "a plaintiff must show: (1) it has suffered, or imminently will suffer, a concrete and particularized injury-in-fact; (2) the injury is fairly traceable to the defendant's conduct; and (3) a favorable judgment is likely to redress the injury." Houston Chronicle Publ'g Co. v. City of League City, Tex., 488 F.3d 613, 617 (5th Cir. 2007) (citation omitted). Moreover, a "plaintiff can meet the standing requirements when suit is brought under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02, by establishing 'actual present harm or a significant possibility of future harm.'" Bauer v. Texas, 341 F.3d 352, 357–58 (5th Cir. 2003)

(quoting Peoples Rights Org. v. City of Columbus, 152 F.3d 522, 527 (6th Cir. 1998)).

The City argues that Plaintiffs do not have standing because they have not suffered a particularized injury-in-fact. With regard to the penalty provisions of the ordinance, the City claims that Plaintiffs "cannot show . . . that a fine in excess of $500 has been sought against them or that the City has threatened to suspend or revoke any license or permit." The City further maintains that although some Plaintiffs were prosecuted under the ordinance, those prosecutions were for clear violations explicitly provided in either the ordinance itself or its concomitant guidelines, and thus Plaintiffs have not been injured by an application of the challenged "necessary steps" provision. According to the City, the issues raised by Plaintiffs would be more properly addressed in the normal course of their individual prosecutions under the ordinance.

The injury-in-fact element requires that a plaintiff show that he or she "'has sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged official conduct and the injury or threat of injury must be both 'real and immediate,' not 'conjectural or hypothetical.'" City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983) (emphasis added and citations omitted); see Allen, 468 U.S. at 751 ("The injury alleged must be . . . distinct and palpable . . . and not abstract or conjectural or hypothetical.") (internal citations and quotations omitted).

When Plaintiffs brought suit for declaratory and injunctive relief, the ordinance had been in effect for approximately two weeks, and the City had not noticed or charged any Plaintiffs for violations. However, the City's admitted enforcement strategy is to use a complaint-driven scheme, whereby inspectors investigate violations after reports are made to the City's Health and Human Services Department, and the City follows-up with notices of violation and charges in municipal court. According to the City, the bars, restaurants, and

other enclosed public places to which the ordinance applies have control over their respective environments, and thus noticing and prosecuting them, rather than individual smokers, for violations is the most efficient and best use of the City's resources. Therefore, from the ordinance's effective date, City inspectors were targeting Plaintiff bar owners. Further, the injuries resulting from a criminal prosecution for violating the "necessary steps" provision, which Plaintiffs contend is unconstitutionally vague, and from being liable for its penalties, which Plaintiffs allege violate procedural due process and state law, were real and immediate threats.

Moreover, as this case progressed, the threat of enforcement became real as some Plaintiffs actually were noticed for violations and charged under the ordinance. Although the City claims that these prosecutions were not for violations of the "necessary steps" provision of the ordinance, an assertion contested by Plaintiffs,[9] nowhere in the record does the City suggest that it will refrain from enforcing the "necessary steps" provision against Plaintiffs. Rather, the City continues to publish guidelines explaining the "necessary steps," a clear indication that the City is intent on enforcing this section. Additionally, even if the City has resisted enforcing the $2,000 fine against Plaintiffs and revoking Plaintiff bar owners' licenses or permits at this stage, the City may seek to enforce these penalties later.[10] This circuit has recognized that a party has

---

[9] All the complaints produced at trial specifically allege that the owner or operator "knowingly fail[ed] to take necessary steps to prevent or stop another person from smoking in an enclosed area in a public place." (Emphasis added).

[10] The City's restraint likely stemmed from the district court's preliminary injunction, which temporarily enjoined said enforcement provisions starting before any Plaintiffs were cited, and lasting until the permanent injunction replaced it. If we look to the first set of guidelines, issued before Plaintiffs initiated this case, the City stated in response to a frequently asked question regarding the consequences of a violation that "[c]ontinued violations will be cause for enforcement action through the City of Austin Municipal Court" and that "[t]he Violations and Penalties are set forth in the new code." Notably, lacking any limiting instruction, the guidelines imply that the City intended from the beginning to enforce all the penalties under the ordinance.

standing when it has faced prosecution under a criminal ordinance in the past and faces the real possibility of prosecution in the future. Reed v. Giarusso, 462 F.2d 706, 710–11 (5th Cir. 1972). We conclude that because some Plaintiff bar owners have been charged under the ordinance and all Plaintiff bar owners face the real potential of immediate criminal prosecution, they have standing to bring their claims. See Diamond v. Charles, 476 U.S. 54, 64 (1986) (noting that a "conflict between state officials empowered to enforce a law and private parties subject to prosecution under that law is a classic 'case' or 'controversy' within the meaning of Art. III"); see also Hejira Corp. v. MacFarlane, 660 F.2d 1356, 1360 (10th Cir. 1981) (finding the existence of a case or controversy under Article III because the plaintiffs faced "real and genuine threats of prosecution" under the Colorado Drug Paraphernalia statute, although no criminal prosecution had commenced as a result of its enforcement).

The causation and redressability requirements for standing are satisfied as well. The significant threat of prosecution that Plaintiff bar owners face is directly traceable to the City's intention to enforce the ordinance against them, and a judicial invalidation of the ordinance would give Plaintiffs direct relief from being prosecuted.[11]

Even though Plaintiff bar owners have standing, their claims also must be ripe for adjudication. The Supreme Court has stated that the "ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." Reno v. Catholic Social Servs., Inc., 509 U.S. 43, 57 n.18 (1993) (citing Buckley v. Valeo, 424 U.S. 1, 114

---

[11] Inasmuch as Plaintiff bar owners have standing, the question whether the other Plaintiffs have standing is, under the circumstances here, of no consequence. See Rumsfeld v. Forum for Academic & Institutional Rights, Inc., 547 U.S. 47, 52 n.2 (2006) ("[T]he presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement.") (citing Bowsher v. Synar, 478 U.S. 714, 721 (1986)). The claims asserted by the non-bar-owner Plaintiffs were not addressed by the district court, and the failure to address those claims is not appealed.

(1976) (per curiam)). But, "[e]ven when a ripeness question in a particular case is prudential, we may raise it on our own motion, and 'cannot be bound by the wishes of the parties.'" Id. (citing Reg'l Rail Reorganization Act Cases, 419 U.S. 102, 138 (1974)). The "basic rationale [behind the ripeness doctrine] is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." Abbott Labs. v. Gardner, 387 U.S. 136, 148 (1967).[12] For these reasons, a ripeness inquiry is often required when a party is seeking pre-enforcement review of a law or regulation. See, e.g., Poe v. Ullman, 367 U.S. 497 (1961); Lake Carriers' Ass'n v. MacMullan, 406 U.S. 498 (1972).

When this case was initiated, all Plaintiffs were seeking pre-enforcement review. By the time of trial, Plaintiffs Hardee and Johnson had received criminal citations under the ordinance for failing to take the "necessary steps to prevent or stop smoking" in their establishments. Although the municipal court had not fully adjudicated the complaints against Plaintiffs Hardee and Johnson when trial commenced in this case, a concrete dispute had formed, thus avoiding the risk of premature review. Therefore, the issue whether Plaintiffs Hardee's and Johnson's void-for-vagueness claims were initially ripe for review has been mooted by the change in posture of the litigation at the time of trial and appeal. See Reg'l Rail Reorganization Act Cases, 419 U.S. at 102 ("[S]ince ripeness is peculiarly a question of timing, it is the situation now rather than the situation at the time of the District Court's decision that must govern."). However, the remaining Plaintiff bar owners have not been cited, and the City has not

---

[12] "While standing is concerned with who is a proper party to litigate a particular matter, ripeness . . . determine[s] when that litigation may occur. Specifically, the ripeness doctrine seeks to separate matters that are premature for review because the injury is speculative and may never occur, from those cases that are appropriate for federal court action." ERWIN CHEMERINSKY, FEDERAL JURISDICTION § 2.4.1 (5th ed. 2007) (emphasis added).

enforced the challenged fine or license revocation penalties against any Plaintiff. Thus, a ripeness inquiry is still necessary.

"A court should dismiss a case for lack of 'ripeness' when the case is abstract or hypothetical." Monk v. Huston, 340 F.3d 279, 282 (5th Cir. 2003) (quoting New Orleans Pub. Serv., Inc. v. Council of New Orleans, 833 F.2d 583, 586 (5th Cir.1987)). The Supreme Court has expounded that "[t]he key considerations [for ripeness] are the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." Id. (citing Abbott Labs., 387 U.S. at 149) (internal quotation omitted). "A case is generally ripe if any remaining questions are purely legal ones; conversely, a case is not ripe if further factual development is required." Id. Yet, "even where an issue presents purely legal questions, the plaintiff must show some hardship in order to establish ripeness." Cent. & Sw. Servs. v. E.P.A., 220 F.3d 683, 690 (5th Cir. 2000).

The City argues the case is not ripe because Plaintiffs have not shown hardship or that the case is fit for adjudication. Specifically, the City contends pre-enforcement review is unnecessary because complying with the ordinance would not affect the exercise of Plaintiffs' First Amendment or fundamental constitutional rights or cause economic injury or other significant harm. Further, the City asserts that Plaintiffs' case for injunctive relief required additional factual development, rather than relying on the hypothetical facts upon which the district court based its decision.

Looking first at the element of hardship, we find that all Plaintiff bars and owners would suffer hardship were we to deny review. "[W]here a regulation requires an immediate and significant change in the plaintiffs' conduct of their affairs with serious penalties attached to noncompliance, hardship has been demonstrated." Suitum v. Tahoe Reg'l Planning Agency, 520 U.S. 725, 743–44 (1997) (citing Abbott Labs., 387 U.S. at 153). Plaintiffs have alleged that the

14

"necessary steps" provision of the ordinance is unconstitutionally vague on its face because it does not provide fair notice of what conduct is proscribed and thus allows for arbitrary enforcement. Plaintiffs assert that, at their own risk, they must guess the requirements of the "necessary steps" provision and then implement those mandates daily to avoid a violation. Their failure correctly to ascertain and implement that which is demanded under the ordinance will subject them to heavy fines of up to $2,000 per day and possible revocation of their licenses and permits issued by the City without judicial review.[13] In addition, testimony of a City official at trial revealed that a single municipal conviction may precipitate the revocation of an establishment's liquor license. See TEX ADMIN. CODE § 35.31(c)(16); TEX. ALCO. BEV. CODE §§ 11.61(b)(7), 104.01(8). Because Plaintiffs have shown the real possibility of irremediable adverse consequences were we to deny review, Plaintiffs have shown hardship.[14]

---

[13] At the time of trial, Plaintiff Johnson already had five complaints filed against him in municipal court. Depending on the outcome and fine applied in each case, these stand-alone bars could face heavy financial burdens, along with multiple criminal convictions.

[14] Plaintiffs point to the peculiarities of state court review of convictions under the ordinance. Prosecutions under the ordinance are brought in the City of Austin Municipal Court, a court of limited jurisdiction over criminal cases. See TEX. GOV'T CODE ANN. §§ 29.003, 30.00005 (West 2007). Although a municipal judge could dismiss a criminal case on constitutional grounds, she could not issue declaratory or injunctive relief that would prevent the refiling of the case or of similar cases. See State v. Morales, 869 S.W.2d 941, 942 (Tex. 1994) (explaining the state's bifurcated system of civil and criminal jurisdiction and that a civil court has equity jurisdiction to declare constitutionally invalid and enjoin the enforcement of a criminal statute). If a person convicted for violating the ordinance is fined $100 or less, his right of appeal of a constitutional issue ends with the county court. See Alexander v. State, 240 S.W.3d 72, 75–76 (Tex. App.—Austin 2007, no pet. h.) (holding that the defendant who was convicted in a municipal court of record and fined $100 or less, and whose conviction was affirmed by the county court at law, could not appeal to the Court of Appeals to challenge the constitutionality of the city's smoking ordinance on which his conviction was based). We note that the defendant bar owner who was appealing his conviction under the smoking ordinance in Alexander v. State had tried to intervene in this case, but was denied intervention on the basis of Younger abstention because the charges against him were already pending when he tried to enter the suit. Because the evidence of hardship described supra is more than adequate to support our conclusion that the case is ripe for adjudication, we do not address the alleged hardship component of the state court review procedures.

See Toilet Goods Ass'n v. Gardner, 387 U.S. 158, 164–65 (1967) (finding minimal present harm to denying review where the challenged regulation required no advance action on the part of petitioners and no irremediable adverse consequences, such as "heavy fines," "adverse publicity," or "possible criminal liability").

Turning our attention to the second ripeness element, we consider whether the facts of Plaintiffs' claims are fit for review. Plaintiffs challenged the penalty provision, permitting a fine of up to $2,000, for being in violation of the Texas Penal Code, and the enforcement provision, giving the city manager discretion to revoke permits and licenses, for failing to provide procedural due process. To determine the merits of both of those claims, no further factual development is necessary, as they are both purely legal inquiries in the context of this case. Consequently, they are ripe.

Now, the only remaining issue is whether Plaintiffs' primary claim, that the ordinance is unconstitutionally vague on its face, is fit for review. Many times void-for-vagueness challenges are successfully made when laws have the capacity "to chill constitutionally protected conduct, especially conduct protected by the First Amendment." United States v. Gaudreau, 860 F.2d 357, 360 (10th Cir. 1988); see, e.g., Coates v. City of Cincinnati, 402 U.S. 611, 615–16 (1971); Colautti v. Franklin, 439 U.S. 379, 390–91 (1979). Nevertheless, laws that do not threaten to infringe constitutionally protected conduct also may be challenged facially as unduly vague, in violation of due process. Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 497 (1982). In the latter scenario, "the complainant must demonstrate that the law is impermissibly vague in all of its applications." Id. In undertaking that analysis, however, a reviewing court should "examine the complainant's conduct before analyzing other hypothetical applications of the law" because "[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the

vagueness of the law as applied to the conduct of others." Id. (emphasis added); see also United States v. Mazurie, 419 U.S. 544, 550 (1975) ("[V]agueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand.").

Here, we are wrestling with the second scenario as the ordinance does not threaten to inhibit any constitutionally protected conduct.[15] In the context of pre-enforcement review, which is still the case for the uncharged Plaintiff bar owners, examining facial vagueness is often difficult, perhaps impossible, because facts are generally scarce. However, in this case, both Plaintiffs Hardee and Johnson had been issued multiple notices of violation and charged for violating the ordinance prior to the evidentiary hearing. Due to this development, the evidence adduced at trial provided an adequate record of the ordinance's operation and particularized harmful effect on all Plaintiff bars and owners to permit a determination of whether the "necessary steps" provision is impermissibly vague in all its applications. Compare Socialist Labor Party v. Gilligan, 406 U.S. 583, 587–88 (1972) (determining constitutional and void-for-vagueness claims were unfit for review because of the skimpy factual record: very little was known about the operation of the challenged affidavit requirement and its potential effect on claimants). Accordingly, we may review the vagueness challenge in light of the conduct of the charged Plaintiffs, Hardee and Johnson, to determine first if at least some of their conduct is clearly proscribed by the "necessary steps" provision. If that inquiry is answered affirmatively, it must be the case that neither the charged nor the uncharged Plaintiffs can prove that the statute is impermissibly vague in all of its applications because it has been validly applied to Johnson and Hardee.

---

[15] Plaintiffs have failed to provide sufficient evidence that the ordinance threatens to inhibit constitutionally protected conduct. Although ripeness is a justiciability issue, typically a pre-merits inquiry, in ascertaining whether there is an adequate factual record, we must consider, to some extent, the merits.

However, if that inquiry is answered negatively, we must further examine other hypothetical applications of the "necessary steps" provision to determine whether it is impermissibly vague in all its applications.

## B. Facial Vagueness Challenge

Tasked with the difficult challenge of considering facial vagueness, the district court evaluated: (1) whether the ordinance's "necessary steps" provision provided fair notice that would enable ordinary people to understand the conduct prohibited; and (2) whether it authorized and encouraged arbitrary enforcement. See United States v. Escalante, 239 F.3d 678, 680 (5th Cir. 2001) (citing City of Chicago v. Morales, 527 U.S. 41, 56 (1999) (plurality)). In holding that the City's "necessary steps" provision failed to satisfy this test, the court noted that neither the ordinance nor the guidelines contained an exclusive list or safe harbor provision, and that the guidelines were subject to amendment and differing interpretations. The district court's decision was greatly influenced by City officials who could not detail the steps that a business would have to implement to satisfy the "necessary steps" requirement under certain hypothetical fact scenarios.

The City asserts that the district court erred in its overall analysis of facial vagueness. The City argues that even though the district court applied the aforementioned test, albeit erroneously, it failed to consider the complete legal test for facial vagueness. Specifically, the City notes that this court and others have previously provided, in cases involving no constitutionally-protected conduct, that "[a] facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." United States v. Robinson, 367 F.3d 278, 290 (5th Cir. 2004) (emphasis added) (quoting United States v. Salerno, 481 U.S. 739, 745 (1987)). The City maintains that the ordinance is valid in many of its applications, and thus Plaintiffs cannot carry

18

their burden. The City further contends that the "necessary steps" provision should be given its common, ordinary meaning and argues that owners and operators of bars are sufficiently capable of employing their experience and common sense to interpret their duties under the law to prohibit smoking in their establishments. See Steffes v. City of Lawrence, 160 P.3d 843, 852 (Kan. 2007) (holding that business owners must take enforcement efforts to prevent smoking in their establishments and that "common understanding and practice play a large role" in determining whether a business has complied with the ordinance).

Plaintiffs argue that the "necessary steps" provision establishes no standard at all. In fact, they contend, that it is a "tautology." According to Plaintiffs, the "ever-changing" guidelines are non-binding and thus fail to cure the vagueness of the "necessary steps" standard.

At a threshold level, Plaintiffs confront a heavy burden in advancing a facial constitutional challenge to an ordinance. See Nat'l Endowment for the Arts v. Finley, 524 U.S. 569, 580 (1998) ("Facial invalidation is, manifestly, strong medicine that has been employed by the Court sparingly and only as a last resort.") (internal quotation omitted); Sabri v. United States, 541 U.S. 600, 609 (2004) ("Facial adjudication carries too much promise of 'premature interpretatio[n] of statutes' on the basis of factually barebones records.") (quoting United States v. Raines, 362 U.S. 17, 22 (1960)). For the reasons stated below, we agree with the City and conclude that Plaintiffs have fallen short of meeting this heavy burden.

As previously noted, in Village of Hoffman Estates the Supreme Court announced the proper procedure for analyzing a facial vagueness challenge. 455 U.S. at 494–95. To begin, the court must consider whether the ordinance reaches a substantial amount of constitutionally protected conduct. Id. at 494. "[A]ssuming the enactment implicates no constitutionally protected conduct, [a

court] should uphold the challenge only if the enactment is impermissibly vague in all of its applications." Id. at 494–95. However, "[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." Id. (emphasis added). Thus, the complainant's conduct should be analyzed before the court considers other hypothetical applications of the law. Id. at 495.

In Plaintiffs' Amended Complaint, which was the live pleading at trial, they alleged, as the district court styled it, "everything-but-the-kitchen-sink." With respect to many of the allegations, Plaintiffs failed to provide useful evidence at either the preliminary injunction or trial stages. Thus, the district court summarily dismissed most of Plaintiffs' claims and, in the end, only granted Plaintiffs relief on their facial vagueness challenge to the "necessary steps" provision of the ordinance, as well as their two penalty provision issues. The City appealed the district court's judgment on the vagueness claim. Plaintiffs cross-appealed, arguing only that the district court abused its discretion in denying them attorneys' fees. Significantly, Plaintiffs did not appeal any of their constitutional claims; however, they attempt to resurrect them in their appellee briefs in urging this court to apply a stricter void-for-vagueness test because constitutionally protected conduct is at issue. Although a timely notice of appeal is a prerequisite for the exercise of our jurisdiction, U.S. v. Carr, 979 F.2d 51, 55 (5th Cir. 1992), to the extent that the Village of Hoffman Estates test requires consideration of whether the ordinance reaches constitutionally protected conduct, we will consider Plaintiffs' arguments that were properly raised before and decided by the district court, namely, the allegations regarding their First Amendment interest to be free of compelled speech and their liberty interest in the pursuit of the profession of one's choice.[16]

---

[16] Plaintiffs' argument that the ordinance violates their Fifth Amendment interest in avoiding self-incrimination was excluded from Plaintiffs' Amended Complaint. Thus, even the

Plaintiffs assert that the ordinance violates their First Amendment right to be free from compelled speech. In particular, Plaintiffs allege that the guidelines compel them to speak against their will by mandating verbal confrontation with their patrons—verbally requesting them to stop smoking and to leave the premises. The district court rejected this argument in both the preliminary injunction order and its final judgment due to Plaintiffs' failure to provide useful evidence on the issue. We agree.

Recently in Rumsfeld v. Forum for Academic and Institutional Rights, Inc. ("FAIR"), 547 U.S. 47, 60 (2006), the Supreme Court upheld the Solomon Amendment, a congressional regulation that denies federal funding to institutions of higher education that prohibit military access to and assistance for recruiting services, against a challenge brought by an association of law schools that it unconstitutionally compelled their speech. The Court first explained that "[a]s a general matter, the [statute] regulates conduct, not speech" and that the "[l]aw schools remain free . . . to express whatever views they have on" the mandated policy. Id. The Court further noted that "[t]he compelled speech to which the law schools point[—sending emails and posting notices on behalf of the military—] is plainly incidental to [that] regulation of conduct." Id. at 62 (emphasis added). And finally, in rejecting the claim, the Court stated that the law schools' suggestion that the "compelled" emails and notices were similar to "forcing a student to pledge allegiance," see W. Virginia Bd. of Ed. v. Barnette, 319 U.S. 624, 642 (1943), "or forcing a Jehovah's Witness

---

district court's determination that all remaining claims fail as a matter of law did not dispose of this argument, and it is waived on appeal. See Harris County, Tex. v. CarMax Auto Superstores, Inc., 177 F.3d 306, 326 (5th Cir. 1999) ("Typically we will not consider on appeal matters not presented to the trial court.") (citation omitted). Even if we were to review this claim, it would fail, as a matter of law, because Plaintiffs provide no useful evidence on the issue.

to display the motto 'Live Free or Die,'" see Wooley v. Maynard, 430 U.S. 705, 717 (1977), "trivializes the freedom protected" in those cases. FAIR, 547 U.S. at 62.

Similarly, we find that Plaintiffs' contention here, that the ordinance unconstitutionally compels their speech, trivializes the freedom protected in Barnette and Wooley. The ordinance's goal is to prohibit smoking in enclosed public places in order to protect the City's population from the harmful effects of second-hand smoke. To achieve that goal, the ordinance requires Plaintiffs to take the "necessary steps" to stop another person from smoking. Thus, as a general matter, the ordinance regulates Plaintiffs' conduct, not speech. Plaintiff bar owners and their employees remain free to express whatever views they have on the ordinance. And, although the amended guidelines call for Plaintiffs to "verbally" request smokers to extinguish cigarettes or leave the premises, this speech is plainly incidental to the ordinance's regulation of conduct. After all, the guidelines were amended to include these verbal requirements only after Plaintiffs "allegedly" experienced difficulty in implementing the ordinance.[17] Cf. Giboney v. Empire Storage & Ice Co., 336 U.S. 490, 502 (1949) ("[I]t has never been deemed an abridgment of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written or printed."). In short, we conclude the ordinance does not threaten to affect Plaintiffs' First Amendment right to be free from compelled speech. See Dutchess/Putnam Rest. & Tavern Ass'n, Inc. v. Putnam County Dep't of Health, 178 F. Supp. 2d 396, 405–06 (S.D.N.Y. 2001) (rejecting a First Amendment challenge to a smoking regulation's requirement of posting no smoking signs or symbols); cf. Players,

---

[17] Testimony at trial revealed that some Plaintiffs were trying to skirt the ordinance's obligation to enforce the smoking ban in their establishments by allowing smokers to continue smoking as long as they signed forms acknowledging that the bar owners asked them to quit smoking and to leave the premises, when that was not, in fact, the case.

Inc. v. City of New York, 371 F. Supp. 2d 522, 543 (S.D.N.Y. 2005) (finding smoking bans not to be overbroad because they are "entirely targeted at conduct—the act of smoking in certain places—rather than at speech, association, or assembly").[18]

Plaintiffs further contend that the vagueness of the "necessary steps" provision permits unreasonable government interference in the operation of their businesses, a protected liberty interest. As support for this proposition, Plaintiffs invoke Stidham v. Texas Commission on Private Security, 418 F.3d 486 (5th Cir. 2005). In that case, the plaintiff claimed that the unauthorized and threatening letters that were sent to his customers by the investigators for the Texas Commission on Private Security, who were seeking qualified immunity in the suit, amounted to a declaration that the plaintiff was guilty before he was tried. Id. at 490. Those letters indicated that the plaintiff, whose business provided motorcycle escorts for funeral services, was operating without a required license, and, as such, those who knowingly contracted with him would be committing a misdemeanor offense. Id. at 488–89. The plaintiff averred that the letters effectively destroyed his business. Id. at 490. Applying the test for qualified immunity, we "confirmed the principle that one has a constitutionally protected liberty interest in pursuing a chosen occupation" and found the investigators' behavior in sending the unauthorized letters unreasonably interfered with that interest. Id. at 491 (citation omitted). This case is distinguishable. Although Plaintiff bar owners may have a constitutionally protected interest in pursuing their chosen profession, that being the operation of a bar that provides alcohol and other entertainment, the City's ordinance does not threaten to interfere with that interest. Unlike in Stidham, the ordinance at issue here is not only authorized, but a valid exercise of the City's police

---

[18] We note that in asserting their First Amendment argument, Plaintiffs refrain from making overbreadth claims with respect to the First Amendment rights of smokers.

power; it merely regulates smoking to minimize the adverse effects of second-hand smoke and does not threaten to infringe Plaintiffs' liberty interest in pursuing their chosen occupations. See Lexington Fayette County Food & Beverage Ass'n v. Lexington-Fayette Urban County Gov't, 131 S.W.3d 745, 752 (Ky. 2004) (holding that an ordinance that prohibited smoking in public buildings to protect the public from the effects of second-hand smoke did not improperly infringe on the right of business owners to conduct their business without impermissible interference from government).

Because the ordinance does not threaten to inhibit constitutionally protected conduct, we continue under the rubric in Village of Hoffman Estates and consider whether the ordinance is impermissibly vague in all its applications, see also United States v. Clinical Leasing Serv., Inc., 925 F.2d 120, 122 (5th Cir. 1991), keeping in mind that we must first apply the statute to Plaintiffs' conduct before considering hypothetical scenarios.[19] A legislative enactment is vague in all of its applications if it is so "indefinite that no one could know what" is prohibited, creating an ordinance that is "substantially incomprehensible." Exxon Corp. v. Busbee, 644 F.2d 1030, 1033 (5th Cir. 1981); see also Coates, 402 U.S. at 614 (noting that an ordinance is not unconstitutionally vague if "it requires a person to conform his conduct to an

---

[19] Before proceeding, we consider Plaintiffs' contention that they do not face the burden of demonstrating the ordinance is vague in all its applications. Specifically, Plaintiffs rely on City of Chicago v. Morales, to argue that they are required only to prove that "vagueness permeates the ordinance." 527 U.S. at 55 n.22 (plurality). Plaintiffs' reliance on Morales is in error. In Morales, the Court struck down an anti-loitering ordinance despite possible situations in which it could constitutionally be applied. Id. at 64. In that case, the Court was applying a very stringent vagueness test because it was dealing with a criminal ordinance that reached a substantial amount of constitutionally protected conduct. Id. at 55. In particular, "the freedom to loiter for innocent purposes is part of the 'liberty' protected by the Due Process Clause of the Fourteenth Amendment." Id. at 53. However, in this case, no constitutionally protected conduct is threatened by the City's ordinance. Therefore, we apply the appropriate test from Village of Hoffman Estates. 455 U.S. at 494–95; see also Robinson, 367 F.3d at 290 (requiring a demonstration that there are "no set of circumstances . . . under which the Act would be valid" to sustain a facial vagueness attack).

imprecise but comprehensible normative standard"). Furthermore, a statute that "vests virtually complete discretion in the hands of the police" fails to provide the "minimal guidelines" required for due process. Kolender v. Lawson, 461 U.S. 352, 358 (1983).

In evaluating vagueness, a reviewing court should consider: (1) whether the law "give[s] the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly;" and (2) whether the law provides explicit standards for those applying them to avoid arbitrary and discriminatory applications. Grayned v. City of Rockford, 408 U.S. 104, 108–09 (1972). However, these standards should not be "mechanically applied." Village of Hoffman Estates, 455 U.S. at 498.

> The degree of vagueness that the Constitution tolerates—as well as the relative importance of fair notice and fair enforcement—depends in part on the nature of the enactment. Thus, economic regulation is subject to a less strict vagueness test because its subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action. . . . The Court has also expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe. And the Court has recognized that a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed.

Id. at 498–99 (citations omitted and emphasis added). Finally, as previously stated, a more stringent vagueness test should apply where a law "threatens to inhibit the exercise of constitutionally protected rights." Id. at 499; see also Smith v. Goguen, 415 U.S. 566, 573 (1974) ("Where a statute's literal scope, unaided by a narrowing state court interpretation, is capable of reaching

expression sheltered by the First Amendment, the [vagueness] doctrine demands a greater degree of specificity than in other contexts.").

In this case, although the ordinance's penalties are criminal in nature and they explicitly allow for conviction without a scienter requirement,[20] the ordinance does not threaten to inhibit the exercise of constitutionally protected rights and is akin to the quasi-criminal ordinance in Village of Hoffman Estates that regulated business activity. The evidence reveals that the owners and operators regulated by the ordinance may clarify the meaning of its provisions by their own inquiry. In particular, the City's proffered guidelines were drafted after town meetings with the business owners themselves, and the updated guidelines were issued as a response to requests for clarification of the "necessary steps" provision by business operators. See Village of Hoffman Estates, 455 U.S. at 498–99 (stating that regulated business activity is subject to a less strict vague standard due in part to the enterprise's "ability to clarify the meaning of the regulation by its own inquiry, or by resort to an administrative process"). To be safe, we apply the "relatively strict test" required for criminal laws. See id. at 499–500.

In order to sustain a vagueness challenge, "a penal statute [must] define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited." Kolender, 461 U.S. at 357 (emphasis added). And, although the district court in this case implied that in order for the ordinance to pass constitutional muster, it must delineate the exact actions a bar owner would have to take to avoid liability, this high degree of language precision exceeds the constitutional requirements for upholding a statute. See Boyce Motor Lines v. United States, 342 U.S. 337, 340 (1951) ("[F]ew words possess the precision of mathematical symbols, most statutes must deal with

---

[20] However, the City points out that it only charges owners and operators for "knowing" violations.

untold and unforeseen variations in factual situations, and the practical necessities of discharging the business of government inevitably limit the specificity with which legislators can spell out prohibitions."). In fact, this circuit has held that "[o]nly a reasonable degree of certainty is required." United States v. Tansley, 986 F.2d 880, 885 (5th Cir. 1993) (emphasis added) (citing United States v. Barnett, 587 F.2d 252, 256 (5th Cir. 1979)).

To begin, we note that the ordinance's goal, as a whole, is to prevent smoking in enclosed public places, so as to minimize the health hazards associated with second-hand smoke. See Grayned, 408 U.S. at 110 (considering "what the ordinance as a whole prohibits" in analyzing whether the law was unconstitutionally vague). The title of the ordinance reveals that it is designed to prohibit "Smoking in Public Places," and the title of the section at issue, § 10-6-2, is even more explicit: "Smoking Prohibited." Furthermore, the language of the disputed subsection is sufficiently clear to put Plaintiffs on notice of what the statute governs and at whom it is directed. First, it is limited to "[t]he owner or operator of a public place," as defined in the ordinance, and second, it requires that said owner or operator "take necessary steps to prevent or stop another person from smoking in an enclosed area in a public place." § 10-6-2(E).

Next we examine the disputed words "necessary steps," to determine whether Plaintiff bar owners had fair notice of what conduct was prohibited, or mandated, on their part, and whether inspectors were provided definite standards to avoid arbitrary enforcement.[21] In conducting this examination, we "must, of course, consider any limiting construction that a state court or enforcement agency has proffered." Village of Hoffman Estates, 455 U.S. at 494 n.5. This criterion is especially important in a case such as this where the

---

[21] "The same facets of a statute usually raise concerns of both fair notice and adequate enforcement standards. Hence the analysis of these two concerns tends to overlap." Gaudreau, 860 F.2d at 359.

ordinance was not drafted by the City but instead enacted via voter initiative, thereby prohibiting, pursuant to the City Charter, amendment or repeal until the ordinance has been in effect for two years. AUSTIN CITY CHARTER, art. IV, § 6. Accordingly, we look to the City's two sets of detailed guidelines, promulgated in an attempt to resolve any uncertainty regarding the scope of the "necessary steps" provision.

The first set of guidelines explicitly provides that "necessary steps" include posting no smoking signs, removing ashtrays, asking the patron to stop smoking, asking the patron to leave the establishment if he continues to smoke, and following standard business practices for enforcing house rules. On March 9, 2006, an amended set of guidelines was issued, in response to requests for clarification, adding: (1) that the owners or operators refuse service to a patron if he continues to smoke; (2) that the requests to stop smoking and to leave the establishment be verbal; and (3) that the standard business procedures be applied in the same manner as violations of house rules, local ordinances, or state laws. These guidelines not only provide standards to those inspectors enforcing the ordinance but essentially provide Plaintiff bar owners and operators a clear "how to" guide for avoiding a violation under the "necessary steps" provision. Nevertheless, evidence at trial revealed that Plaintiff bar owners often failed to implement any steps to prevent smoking in their establishments.

For example, Gail Johnson was charged for a clear pattern and practice of refusing to comply with the ordinance at both his establishments, Canary Hut and Canary Roost. Specifically, on more than one occasion, inspectors observed several patrons smoking, and the operators on duty made no attempts to ask them to stop or leave the premises, or to refuse them service. At one point, an inspector even gave a bartender the opportunity to implement the steps and prevent a customer from smoking, to which the bartender responded with a

shoulder shrug, rather than compliance. Bartenders themselves were seen smoking when inspectors entered the bar, a clear indication that Johnson's establishments were intentionally flouting the ordinance. Additionally, although refusing service was included as a step in the amended guidelines, testimony revealed that Johnson failed to instruct his employees to refuse service to his smoking customers.[22]

Similar attempts to circumvent the obligations of the ordinance were observed at the bar managed by Bill Hardee—the Warehouse, Saloon and Billiards. Although no smoking signs were posted there, the operators either failed to remove ashtrays or instead provided candle holders to be used as substitutes. In addition, the establishment had customers sign forms acknowledging that they had been instructed to go outside to smoke, but once the form was signed, the operators permitted the customers to continue to smoke inside the establishment. Inspectors observed operators who neither requested smokers to extinguish their cigarettes nor refused service to those smoking.[23] From this evidence, we find it apparent that, most of the time, the only "steps" taken were in trying to find a loop-hole to avoid enforcing the ordinance. Such behavior is a clear violation of the "necessary steps" provision. See Tansley, 986 F.2d at 885 ("The requirement that statutes give fair notice cannot be used as a shield by someone who is already intent on wrongdoing.") (citing United States v. Brewer, 835 F.2d 550, 553 (5th Cir. 1987)).

In addition, the danger of arbitrary and discriminatory enforcement is unfounded. The City's officials testified that three notices of violation were issued to Plaintiffs Hardee and Johnson before charges were filed in municipal

---

[22] A Canary Roost employee, who was issued notices of violation, testified that she had never refused service to a customer who was smoking, but that she believed that refusing service would stop patrons from smoking at the Canary Roost.

[23] A bartender from the Warehouse Saloon and Billiards testified that he never refused service to a smoking customer.

court, and that the City's procedure in filing charges only after the third notice is issued and a management official has had a chance to review the notices is standard. In addition, the pre-printed forms provided to the inspectors to notice owners and operators for violations explicitly provide the five steps listed in the guidelines. Evidence revealed that the inspectors normally circle the steps that owners and operators failed to implement before issuing a violation. This direct reference to the guidelines' progressive steps while actually issuing the notices to owners and operators helps to standardize enforcement. Furthermore, any concern the district court had about arbitrary enforcement was based on lengthy hypothetical questions posed to enforcement officials, whose complete testimony revealed that they look for a pattern of noncompliance, and that in certain scenarios, if it is apparent that good faith attempts are not being made to take "necessary steps" to prevent smoking, then a notice of violation would be issued.

Thus, in light of the evidence at trial, Plaintiffs fail to demonstrate that the "necessary steps" provision is so indefinite as to provide them with no standard of conduct at all.[24] The ordinance and its concomitant guidelines

---

[24] Although the Texas courts have not had an opportunity to interpret the meaning of "necessary steps" in the City's ordinance, the Texas Court of Criminal Appeals has examined a statute that made it unlawful for a business to "allow patrons" to form a line, or queue, on the public right-of-way on the River Walk in San Antonio. State v. Guevara, 137 S.W.3d 55, 55–56 (Tex. Crim. App. 2004). A business owner was charged under the ordinance for allowing patrons to queue outside her business. Id. She challenged the statute as overly vague because it "failed to describe with reasonable certainty what actions constitute allowing patrons to queue on the public right-of-way." Id. at 56. Similar to the ordinance in this case, the Guevara ordinance established a crime of omission, or failure to act—there, the failure to prevent a queue from forming and here, failing to take the "necessary steps" to prevent smoking. The business owner in Guevara argued that the statute's failure to set out what precise steps the business had to take to prevent queuing doomed the ordinance, but the Texas Court of Criminal Appeals disagreed: "[T]he fact that the ordinance did not suggest a method of preventing queuing is of no significance. . . . There are common-sense methods for preventing queuing, and it is not necessary or desirable to require the City to codify these methods." Id. at 57–58.

The Texas court's reliance on a business owner's "common-sense" in Guevara is supported by federal constitutional law. See Village of Hoffman Estates, 455 U.S. at 501 (asking whether a "business person of ordinary intelligence would understand" what the ordinance requires); Boyce Motor Lines, 342 U.S. at 340–41 ("The requirement of reasonable

provide adequate notice of the actions required, as well as an ascertainable standard of guilt for inspectors. Plaintiffs' void-for-vagueness challenge to the "necessary steps" provision of the ordinance fails on the record evidence of actual charged violations; we need not address hypothetical scenarios.

## C. Permanent Injunction

The City also challenges the district court's grant of a permanent injunction with respect to the "necessary steps" provision.[25] We review the award of a permanent injunction for "abuse of discretion" which occurs if the district court: "(1) relies on clearly erroneous factual findings; (2) relies on erroneous conclusions of law; or (3) misapplies the law to the facts." McClure v. Ashcroft, 335 F.3d 404, 408 (5th Cir. 2003). In holding that Plaintiffs were entitled to a permanent injunction, the district court found that they had established: (1) success on the merits; (2) that a failure to grant the injunction will result in irreparable injury; (3) that said injury outweighs any damage that the injunction will cause the opposing party; and (4) that the injunction will not disserve the public interest. Roark & Hardee LP, 2006 WL 2854399, at *2 (quoting V.R.C. L.L.C. v. City of Dallas, 460 F.3d 607, 611 (5th Cir. 2006)).

---

certainty does not preclude the use of ordinary terms to express ideas which find adequate interpretation in common usage and understanding. . . . The use of common experience as a glossary is necessary to meet the practical demands of legislation.") (emphasis added and citation omitted). As business owners of stand-alone bars, Plaintiffs frequently must take steps to control behavior ranging from inappropriate dress, rowdiness, fighting, underage drinking, and intoxication. Thus, through prior business experiences, these owners and operators have knowledge of the "steps" that work best in their establishments. They can easily draw on those common experiences and implement the same types of steps to enforce the smoking ordinance. The City even points this out to the owners and operators with the inclusion of the final step in both sets of guidelines, stating that "necessary steps" requires an application of the standard business practices for violations of house rules, state laws, and local ordinances.

[25] Although the City appeals the entire judgment, it makes no arguments regarding the validity of the order permanently enjoining enforcement of the penalty provisions.

31

Based on our conclusion that the district court erred in finding that the "necessary steps" provision in the ordinance is unconstitutionally vague, it was an abuse of discretion to grant a permanent injunction enjoining the City from enforcing that section of the ordinance.

## D. Attorneys' Fees

Plaintiffs appealing the attorneys' fees issue argue that the district court erred in failing to grant them attorneys' fees as a "prevailing party" in the litigation. Under 42 U.S.C. § 1988(b), a district court, in its discretion, may award to the "prevailing party" in a § 1983 action reasonable attorneys' fees. We review a district court's denial of attorneys' fees under § 1988 for abuse of discretion. Myers v. City of W. Monroe, 211 F.3d 289, 292 (5th Cir. 2000).

In arguing that they should be considered a "prevailing party" under § 1988, those Plaintiffs rely primarily on the district court's judgment enjoining the City from holding the owner or operator of a public place liable for failure to take "necessary steps" to prevent smoking in their establishments. As this ruling was in error, Plaintiffs' case for attorneys' fees is significantly diminished. The only other constitutional claim within the ambit of § 1988(b) for which the district court granted relief to Plaintiffs was the due process claim regarding the suspension and revocation of city permits and licenses without expeditious judicial review, a holding which was not appealed on its merits. Considering the numerous other claims Plaintiffs lost and the fact that the City can still enforce the license revocation provision, as long as it provides expeditious judicial review, Plaintiffs' success is, at most, de minimis, and the district court did not abuse its discretion in denying their claim for attorneys' fees under § 1988 as a "prevailing party." See Texas State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 792 (1989) (stating that if the party succeeds on a "purely technical" or "de minimus" legal question, then the party is not a "prevailing party" for purposes of § 1988 attorneys' fees).

### III. CONCLUSION

We REVERSE that portion of the district court's judgment declaring the "necessary steps" provision of the ordinance unconstitutionally vague, VACATE the provision of the permanent injunction enjoining enforcement of said provision, and otherwise AFFIRM the judgment. We also AFFIRM the district court's denial of attorneys' fees. Plaintiffs shall bear the costs of these appeals.