United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 22, 2005**

Charles R. Fulbruge III
Clerk

REVISED JULY 28, 2005

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 04-50775

_____

GENE STIDHAM,

Plaintiff - Appellant,

versus

TEXAS COMMISSION ON PRIVATE SECURITY; ET AL.,

Defendants,

JERRY L. McGLASSON, Executive Director, in
his individual and official capacity; E. D.
BIGGS, Investigator, in her individual and
official capacity; LARRY SHIMEK, in his
individual and official capacity; CLIFF
GRUMBLES, Executive Director, in his
individual and official capacity,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Western District of Texas, Austin

_____

Before JOLLY, SMITH, and DeMOSS, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Gene Stidham ("Stidham") owned a motorcycle funeral escort

business. He sued the individual defendants, who are officials of

the Texas Commission on Private Security ("TCPS"). The basis of

his § 1983 action is that, after he refused to apply for a TCPS

license, the defendants, in violation of his right to due process

of law, sent letters to his funeral home clients telling them that Stidham was operating in violation of the law and that they could be prosecuted if they continued to contract with him.  He claims that this conduct destroyed his business, thus depriving him of property and his liberty right to engage in a chosen profession. Stidham also contends that the defendants furthered their unconstitutional conduct and damage by refusing to notify Stidham's clients when the authorities exonerated him. The district court granted the defendants qualified immunity and dismissed the suit on summary judgment.  Because we find that the defendants deprived Stidham of his clearly established rights in an objectively unreasonable manner, we vacate the district court's grant of qualified immunity and remand the case for further proceedings.

I

A

Stidham is a former police officer who, from 1989 to September 2001, operated Stidham Motorcycle Escorts.[1]  He provided uniformed motorcycle escort services to control traffic and provide traffic safety for funeral processions.  Stidham had oral contracts with

---

[1] In 1996, Stidham had operated a company called Triumph Security that provided security guard services.  The TCPS had issued a complaint against him for providing guard services without the requisite owner's license.  An Administrative Law Judge found in favor of the TCPS and required Stidham to obtain the license within 100 days.  Stidham instead chose to discontinue guard services.

several funeral homes in Tarrant County and with one funeral home in Dallas County.

In June 2001, after reading a newspaper article about an accident in which an employee of Stidham Motorcycle Escorts was killed, Jerry McGlasson ("McGlasson"), the Executive Director of TCPS, directed E. D. Biggs, a TCPS investigator, to contact Stidham. Biggs told Stidham that he needed a license to operate his business because his business was a "guard company" under Texas Occupations Code §§ 1702.102 and 1702.108.[2] Stidham replied that

---

[2] Section 1702.102 reads:

> (a) Unless the person holds a license as a security services contractor, a person may not:
>
> > (1) act as an alarm systems company, armored car company, courier company, guard company, or guard dog company;
> >
> > (2) offer to perform the services of a company in Subdivision (1); or
> >
> > (3) engage in business activity for which a license is required under this chapter.
>
> (b) A person licensed only as a security services contractor may not conduct an investigation other than an investigation incidental to the loss, misappropriation, or concealment of property that the person has been engaged to protect.

(Emphasis added.)

Section 1702.108 reads:

> A person acts as a guard company for the purposes of this chapter if the person employs

3

he did not need a license and that he would not get one.  Biggs then telephoned Stidham a second time, urging him to apply for a license.  She also faxed him a copy of the Occupations Code provisions on security guards.  Stidham took no action to obtain a license.

---

an individual described by Section 1702.323(d) or engages in the business of or undertakes to provide a private watchman, guard, or street patrol service on a contractual basis for another person to:

(1) prevent entry, larceny, vandalism, abuse, fire, or trespass on private property;

(2) prevent, observe, or detect unauthorized activity on private property;

(3) control, regulate, or direct the movement of the public, whether by vehicle or otherwise, only to the extent and for the time directly and specifically required to ensure the protection of property;

(4) protect an individual from bodily harm including through the use of a personal protection officer; or

(5) perform a function similar to a function listed in this section.

(Emphasis added.)

On August 10, 2001, pursuant to the TCPS Manual's provisions,[3] Biggs obtained a misdemeanor arrest warrant in Tarrant County for Stidham based on his operation of a guard company without an owner's license.[4]  Then, in September 2001, while the criminal case in Tarrant County was still pending, Biggs sent letters to four funeral homes in Tarrant County and one in Dallas County with which Stidham had been doing business.  These letters stated:

> This agency has received information that you are contracting with or employing **Stidham Motorcycle Escorts** to provide a service (funeral escort) that requires a license, registration, certificate, or commission, and this company/person *does not* hold a license, registration, certificate, or commission. Section 1702.102 and 1702.108 of the Occupations Code requires that funeral escort services be licensed and regulated by the Texas Commission on Private Security.
>
> Please be advised that *contracting with or employing* a person (company) who is required to hold a license, registration,

---

[3] The Manual provides that it is appropriate to initiate criminal proceedings in a case involving:

> (a) Unlicensed activity in which the investigation reveals that any person in the company or organization, who has any ownership or supervisory position, has been previously registered in any capacity or licensed in any category by the Commission[;]
>
> (b) Unlicensed activity that continues after violation is served in person or by mail with a notice of violation and order to cease and desist.

[4] The record is unclear as to whether he was actually arrested.

certificate, or commission by the Texas Commission on Private Security, *knowing* that that person or company is required to hold a license, registration, certificate or commission is a Class A Misdemeanor, punishable by up to (1) year confinement and/or a $4000.00 fine. However, the offense is a Felony of the 3rd degree if you have been previously convicted of an offense under this Act, and the offense consisted of failing to hold a registration, certificate, license or commission, as stated in 1702.386 of the Occupations Code.

One of the recipients of these letters, Roger Marshall (Marshall), managing director of Greenwood Funeral Home, stated in a deposition that he called McGlasson to discuss the letter. He said that McGlasson threatened to report Marshall's funeral home to the Texas Funeral Commission if Marshall continued to use Stidham Motorcycle Escort Service. Stidham maintains that these letters and the subsequent threats effectively put an end to his business.

On October 19, 2001, the Tarrant County District Attorney's Office declined to prosecute Stidham based on its determination that Stidham's activity did not rise to the level of operating a guard company. Stidham wrote to Larry Shimek (Shimek), TCPS Chief of Investigations, and Cliff Grumbles (Grumbles), TCPS Deputy Director, requesting that they inform his former clients of Tarrant County's refusal to prosecute him. Shimek and Grumbles declined to do so.

Biggs also filed charges against Stidham in Dallas County after receiving advice from her supervisor, Ryan Finch, that the

Dallas County prosecutor might be more informed as to the scope of TCPS's authority to regulate businesses like Stidham's.

On January 6, 2003, the Texas Attorney General issued an opinion that the TCPS lacked authority to regulate funeral motorcycle escort businesses. The record indicates that the TCPS defendants did not inform Stidham's former clients that the Attorney General had issued an opinion affirming that the TCPS did not have the authority to regulate funeral escort services.

B

Stidham sued the TCPS and four of its officers[5] under 42 U.S.C. § 1983, the Texas Constitution, Texas common law, and the Texas Uniform Declaratory Judgment Act. He alleged that the defendants, acting under color of state law but without lawful authority from the Occupations Code, deprived him of property and liberty without procedural and substantive due process, tortiously interfered with his contracts, and intentionally inflicted emotional distress. On May 2, 2004, the district court granted the defendants' motion to dismiss as to the intentional infliction of emotion distress claim.[6]

At summary judgment, the district court dismissed on Eleventh Amendment grounds Stidham's claims against TCPS and the defendants

_____

[5] The four TCPS employees named in the suit were Biggs; Jerry McGlasson, TCPS Executive Director; Larry Shimek, Chief of Investigations at TCPS; and Cliff Grumbles, who later became the Executive Director of TCPS.

[6] Stidham does not appeal this ruling.

in their official capacities.  The court further found that the defendants were shielded from suit in their individual capacities by the doctrine of qualified immunity.  The court reasoned that the defendants' actions were objectively reasonable because they relied on legal advice and because of their history of regulating conduct similar to Stidham's.[7]  After dismissing the § 1983 claims over which it had original jurisdiction, the district court declined to assert supplemental jurisdiction over the remaining state law claims.  Stidham appeals, arguing that the district court erred in granting summary judgment based on qualified immunity.  He asks us to vacate the grant of summary judgment and to remand this case for trial on both his § 1983 claim and his remaining state law claims.

II

We review de novo the district court's grant of summary judgment based on qualified immunity.  Johnson v. Deep East Texas Regional Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004).  Qualified immunity shields state officials from personal suits when they act in their official capacity "insofar as [their] conduct does not violate clearly established statutory or

---

[7] The district court stated in a footnote of its Order that it "does not condone the sending of the letters after the obtainment of the misdemeanor arrest warrant.  Further, when Defendants knew the Tarrant County District Attorney's Office had declined to prosecute Stidham, Defendants should have filed for injunctive relief and advised Stidham and his clients of the Tarrant County District Attorney's Office's decision.  This conduct is unbecoming of public officials with law enforcement powers."

8

constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

We apply a two-part test to determine whether qualified immunity should apply: "(1) whether the plaintiff has alleged a violation of a clearly established constitutional right; and (2) if so, whether the defendant's conduct was objectively unreasonable in the light of the clearly established law at the time of the incident." Domino v. Texas Dep't of Crim. Justice, 239 F.3d 752, 755 (5th Cir. 2001). If we, after considering the summary judgment evidence in the light most favorable to the plaintiff, answer either of the above questions in the negative, then the defendant is entitled to qualified immunity. Id.

III

A

1

Stidham contends that the TCPS defendants' actions deprived him of his clearly established property and liberty interests without due process of law. He asserts that the letters sent by Biggs and the threats made by McGlasson to Marshall violated his right to due process of law by announcing his guilt before lawful proceedings determined whether he was in violation of the law. This conduct, he contends, destroyed his business. Given that he only had oral, at-will contracts with the funeral homes, he characterizes his constitutionally protected property interest as the profits from his business. He also contends that

9

constitutional due process protected his liberty interest in operating his business as his chosen occupation. Stidham maintains that these constitutional rights were clearly established. Stidham further contends that Grumbles's and Shimek's intentional failure to clear his name constituted part of the same deprivation of property and liberty that resulted from the violation of his right to due process of law.

The TCPS defendants counter that Stidham has not pointed to a clearly established right that was violated by the defendants' actions. They argue that he has no written contracts and thus no protectible property interest in his business; furthermore, his interest in the profits from his business is too speculative, in the absence of a contract, to support a protected property interest. His claim of a property interest is at best arguable and is certainly not clearly established. The defendants further contend that an interest that is merely arguable cannot support a due process claim based on property rights. Therefore, the defendants could not reasonably have known that they were violating that interest when they sent the advisory letters, threatened a funeral home director with prosecution, and subsequently failed to clear Stidham's name.

The defendants next argue that Stidham was not arbitrarily deprived of his right to pursue his chosen occupation. This is true, it is said, because he refused to initiate the licensing process after Biggs informed him that he was required to do so.

10

They further characterize Stidham's claim as one of damage to reputation and contend that Stidham must therefore meet the "stigma plus infringement" test, which, they argue, requires that a plaintiff demonstrate that the defendant made a false statement in harming the plaintiff's reputation; and Stidham cannot point to evidence of any false statement.[8] Finally, the TCPS defendants contend that Stidham's rights were not clearly established because the TCPS had successfully prosecuted cases involving conduct similar to Stidham's in the past. Therefore, because Stidham's right to conduct his business without a license was not clearly established, neither was a constitutional right arising therefrom.

2

We are persuaded that, for the purposes of overcoming qualified immunity, Stidham has properly demonstrated the violation of a clearly established right by showing that the defendants deprived him of his liberty interest without due process of law. The Supreme Court has said that "the right to work for a living in the common occupations of the community is of the very essence of the personal freedom and opportunity that it was the purpose of the [Fourteenth] Amendment to secure." Truax v. Raich, 239 U.S. 33, 41

---

[8] The allegations in the advisory letters, the defendants argue, were not willfully false because Biggs believed, based on legal advice, that the TCPS had authority to regulate motorcycle escort services and, consequently, authority to prosecute unlicensed entities and those that contract with them. However, Biggs did not act on legal advice in sending the letters before lawful proceedings had been conducted.

(1915).  We have confirmed the principle that one has a constitutionally protected liberty interest in pursuing a chosen occupation.  See Ferrell v. Dallas Independent School District, 392 F.2d 697, 703 (5th Cir. 1968) (noting that the right of professional musicians to follow their chosen occupation free from unreasonable governmental interference comes within the liberty concept of the Fifth Amendment); Shaw v. Hospital Authority, 507 F.2d 625, 628 (5th Cir. 1975) (holding that a podiatrist's application for staff privileges at a public hospital for purposes of engaging in his occupation as a podiatrist involved a liberty interest protected by the Fourteenth Amendment); San Jacinto Savings & Loan v. Kacal, 928 F.2d 627, 704 (5th Cir. 1991) (finding that the owner of an arcade had a protectible liberty interest in operating her business).

Thus we find that Stidham has identified a protectible liberty interest in pursuing an occupation of his choice.  We further find that his claim that the defendants deprived him of this liberty interest without due process of law states a violation of his clearly established rights.[9]

---

[9]With respect to property rights relating to contracts, our precedent is clear that there must be an enforceable contract between the parties.  See Board of Regents v. Roth, 408 U.S. 564, 577 (1972) (noting that a claimant asserting a property interest must show more than a "unilateral expectation of it[]" and must "have a legitimate claim of entitlement to it.").  Property interests based on at-will contracts do not rise to the level of protectible property interests.  See Farias v. Bexar County Board of Trustees for Mental Health Mental Retardation Services, 925 F.2d 866, 877 (5th Cir. 1991) (holding that because an employee could be

12

Having answered this question, we now turn to the second prong of our analysis, which requires us to determine whether the conduct of the defendants was objectively unreasonable.

B

1

Stidham maintains that the TCPS defendants' conduct was objectively unreasonable because it was perfectly clear that such acts constitute a blatant violation of his right to due process of law. He argues that the district court erred in focusing on the objective reasonableness of the TCPS's assertion of regulatory authority over his business, instead of addressing whether the individual defendants acted unreasonably in their specific conduct.

_____

discharged at will, he had no protectible property interest and no right to a due process hearing). Here, Stidham has failed to provide evidence of an enforceable contract. It appears that the arrangement between him and the funeral homes was based on oral, at will agreements, which either party could terminate at will without consequences. We recognize that Kacal also indicated that the arcade owner had a protected property interest in the lost profits of her business which was destroyed. However, it is unclear in Kacal whether lost profits were considered a protected property interest or only a measure of damages. Given that Stidham had no constitutionally protected property right in his business arrangements with the funeral homes, we agree with the defendants that the profits from unenforceable contracts are not property interests protected under the Due Process Clause. Nevertheless, we are persuaded, if not required, by Kacal to conclude that anticipated profits from this arrangement may be considered as a measure of damages from the deprivation of a liberty interest. Such a conclusion is obviously buttressed by the fact that the elements of a constitutional liberty interest claim embody no property requirements as does the property prong of the Due Process Clause. Consequently, using profits as a measure of damages is a completely different use of the thing from its use to determine the constitutional claim itself.

13

In his view, it is irrelevant whether the TCPS defendants reasonably, if erroneously, assumed that the TCPS had regulatory control over his business; the acts he complains of were carried out in the absence of any established legal authority. He asserts that in their unjustified zeal, they skirted the requirements of the Due Process Clause when they sent the advisory letters and threatened his clients with criminal prosecution without waiting for the criminal proceedings against him to resolve whether he was required to obtain a TCPS license. Stidham concludes that when the focus is on this specific conduct, it is clear that the TCPS defendants were objectively unreasonable in their conduct, because any reasonable officer would have known that a lawful adjudication must precede a finding of guilt.

The TCPS defendants see the case differently. They maintain that because their assertion of regulatory authority over Stidham's motorcycle escort business was a result of a reasonable reading of the relevant statutes and was supported by legal advice, their actions were not objectively unreasonable. They further contend that it was reasonable for them to send the advisory letters because it was an effective way of informing entities of the TCPS's licensing requirements. Finally, they argue that they had sent similar letters in the past and it was therefore not unreasonable for them to follow that practice in this instance.

2

14

We do not dispute that the TCPS defendants may have reasonably believed that the TCPS had regulatory authority over motorcycle escort businesses such as Stidham's. The record shows that their interpretation was supported by legal advice, although the Texas Attorney General ultimately rejected that interpretation. Consistently with their interpretation and with the provisions of the TCPS Manual quoted above, the TCPS defendants initiated criminal proceedings against Stidham for his failure to obtain the requisite guard company license. The district court held that the TCPS defendants' actions were objectively reasonable because they had prosecuted similar conduct in the past and relied on legal advice in initiating criminal proceedings against Stidham.

The TCPS defendants, however, mischaracterize the thrust of Stidham's claim as an assertion of the right to operate his business without interference from the TCPS. We repeat ourselves to say that Stidham's core argument is that his right to due process of law was violated, not by the defendants' attempt to assert regulatory control over his business, but by the defendants' writing unauthorized and threatening letters to Stidham's clients, declaring him and them to be in violation of law -- all before their regulatory authority had been established by a lawful procedure. In the vernacular, Stidham's claim is that the defendants publicly pronounced him guilty before he was tried. This conduct by public officials destroyed his business. Such

15

conduct, Stidham urges, is not objectively reasonable by any standard.

The TCPS official, Biggs, further suggested to Stidham's clients that they were violating the law and she threatened them with prosecution.  In this connection, Biggs does not contend that she relied on either legal authority or advice in sending the letters to the funeral homes.  Further, she has not clearly demonstrated that sending such advisory letters was a common practice on which she might have relied.[10]  The record shows that McGlasson and Biggs deviated from the procedures established in the TCPS Manual for penalizing entities not in compliance with the TCPS's licensing requirements.  Those procedures would have provided Stidham with due process, but in disregarding them, Biggs and McGlasson denied adequate process to Stidham.

Shimek and Grumbles, by wilfully declining to notify Stidham's clients of Tarrant County's refusal to prosecute Stidham and of the Attorney General's pronouncement that the TCPS did not have authority to regulate motorcycle funeral escort businesses, furthered the damage to Stidham's business caused by Biggs's letters and McGlasson's threats.  They were aware of the damage done to Stidham's business because Stidham had complained to them on several occasions.  Thus, we find that Shimek's and Grumbles's

---

[10] The only other instance of such a letter in the record was a December 2001 letter in which no company is singled out by name. We do not suggest that following an unlawful "common practice" justifies the unlawful practice as objectively reasonable conduct.

16

refusal to mitigate the harm to Stidham's business was objectively unreasonable.

Finally, in concluding that the defendants' conduct was objectively unreasonable, we note that the liberty interest transgressed was clearly established and should have been known to a reasonable officer.  See <u>Vandygriff</u>, 724 F.2d at 493 (concluding that "due process guarantees to an applicant facing a licensing process notice and an opportunity to be heard[]").  Consequently, the defendants are not, and cannot be, entitled to qualified immunity.

                                IV

For purposes of qualified immunity, defendants Biggs, McGlasson, Shimek, and Grumbles violated Stidham's clearly established liberty interest in pursuing his chosen occupation without providing due process of law.  For the reasons stated, their conduct was not objectively reasonable.  Therefore, they are not entitled to the protection of qualified immunity, and we VACATE the district court's grant of summary judgment and REMAND this case for further proceedings not inconsistent with this opinion.

                                        VACATED and REMANDED.