# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

April 9, 2014

Lyle W. Cayce
Clerk

No. 13-10948
Summary Calendar

WILLIAM ALEXANDER; RUBY ALEXANDER,

Plaintiffs - Appellants

v.

ROLAND SMITH,

Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:12-cv-714

Before KING, DAVIS, and ELROD, Circuit Judges.

PER CURIAM:[*]

William and Ruby Alexander[1] appeal the district court's order granting summary judgment in favor of Deputy Roland Smith on their Fourth Amendment claims. For the following reasons, we AFFIRM the judgment of the district court.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] Ruby Alexander was known as "Ruby McPeters" at the time of the incident giving rise to this lawsuit. She has since married William Alexander, and she filed this lawsuit under her married name.

No. 13-10948

## I.     Factual and Procedural Background

On October 7, 2010, officials from Child Protective Services ("CPS") came to the home of William and Ruby Alexander to administer a random drug test and inquire after the Alexanders' infant daughter.  Accompanying the CPS officials were two officers from the Hood County Sheriff's Department.  CPS had been informed that the Alexanders, both of whom have a history of drug-related arrests, were using and selling methamphetamine.

Upon CPS's arrival, the Alexanders were in their front yard with their daughter.  CPS informed the Alexanders that they would perform a drug test on them and that a positive result by either parent would result in the removal of their daughter.  Mrs. Alexander failed the drug test, and Mr. Alexander refused to complete the test, which CPS treats as a positive result.  While holding his daughter, Mr. Alexander grew increasingly agitated and told the law enforcement officers that they would have to shoot him in order to take his child.  The officers requested additional support.

Additional law enforcement officers soon arrived at the Alexander home. Around this time, Mr. Alexander handed the baby to Mrs. Alexander.  Captain Jerry East, who had just arrived, advised Mr. Alexander that there was an outstanding warrant for his arrest for the manufacturing and delivery of drugs, signed by a magistrate judge and dated August 10, 2010.  Mr. Alexander claims that he was not presented with the actual warrant.  Captain East handcuffed Mr. Alexander and turned him over to the custody of another officer, who then placed Mr. Alexander in the squad car.

Meanwhile, Lieutenant Katheryn Jividen began interviewing Mrs. Alexander, and according to Lieutenant Jividen, Mrs. Alexander was acting nervous, jittery, and appeared to be impaired.  Mrs. Alexander disputed Lieutenant Jividen's assessment and contends that her behavior was normal. Mrs. Alexander agreed to release her daughter to CPS custody.   While

2

No. 13-10948

Lieutenant Jividen placed the baby into the car seat, she noticed that Mrs. Alexander was clutching her purse and asking a different law enforcement officer if she could return inside the house to obtain shoes since she was barefoot. The officer denied her request. Based on Mrs. Alexander's actions, Lieutenant Jividen asked if she could pat down Mrs. Alexander and search her purse; Mrs. Alexander consented. Lieutenant Jividen stated in an affidavit and police report that she discovered a large roll of currency and a wallet that contained several clear plastic bags of methamphetamine. Mrs. Alexander attested in her affidavit that there were no drugs inside her purse.

After Lieutenant Jividen performed the search, Defendant-Appellee Deputy Roland Smith arrived at the Alexander residence. According to Deputy Smith's affidavit, he had prior personal interactions with the Alexanders and was aware of allegations that they were involved in the sale and use of illegal narcotics. He also knew that Mr. Alexander was the subject of a federal narcotics investigation, was known to be "dangerous" and to "dislike law enforcement," had prior arrests, and had served prison time relating to homicide and illegal weapon charges. Deputy Smith claims that when he arrived at the house, Mr. Alexander was already in handcuffs and being placed in the back of the patrol car, and Lieutenant Jividen was kneeling and had already located the drugs in Mrs. Alexander's purse. Deputy Smith approached Lieutenant Jividen and Mrs. Alexander, and Lieutenant Jividen handed Deputy Smith the wallet with the four baggies of methamphetamine and the roll of money. Mrs. Alexander was then handcuffed, but not by Deputy Smith. Deputy Smith did not witness the handcuffing of Mrs. Alexander because he was securing the narcotics and currency in an evidence bag at the time of her arrest. Mrs. Alexander claims that Deputy Smith placed her in the back seat of the police car, but Deputy Smith disputes this fact. Mrs. Alexander was transported to the county jail by two other officers.

No. 13-10948

After the Alexanders were arrested, three law enforcement officers, including Deputy Smith, performed a protective sweep of the home. The sweep was limited to looking for people in the home, and it lasted approximately sixty-to-ninety seconds. The officers did not find any individuals in the home. The officers then remained outside the home to await the arrival of a search warrant, which was obtained later that evening.

On October 5, 2012, the Alexanders filed this lawsuit in federal court pursuant to 42 U.S.C. § 1983, alleging that Deputy Smith and Hood County violated their Fourth Amendment rights. Deputy Smith moved for summary judgment, raising the affirmative defense of qualified immunity. The district court granted Deputy Smith's motion and entered judgment in his favor. The Alexanders timely appeal, challenging the district court's decision with respect to Mrs. Alexander's unlawful arrest claim and the unlawful search claim.

## II.    Legal Standards

We review a district court's order granting summary judgment de novo, applying the same standard used by the district court. *Haverda v. Hays Cnty.*, 723 F.3d 586, 591 (5th Cir. 2013). Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making this decision, we draw all reasonable factual inferences in the light most favorable to the nonmoving party. *Haverda*, 723 F.3d at 591.

When a government official asserts a qualified immunity defense at summary judgment, the burden shifts to the plaintiff to negate qualified immunity. *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). In assessing a qualified immunity defense, we ask two questions: "(1) whether the plaintiff has alleged a violation of a clearly established constitutional right; and (2) if so, whether the defendant's conduct was objectively unreasonable in the light of the clearly established law at the time of the incident." *Stidham v. Tex.*

4

No. 13-10948

*Comm'n on Private Sec.*, 418 F.3d 486, 490 (5th Cir. 2005) (internal quotation marks and citation omitted).   A negative answer to either of the above questions entitles a defendant to qualified immunity. *Id.*

### III.   Arrest of Mrs. Alexander

Mrs. Alexander argues that her arrest was unconstitutional, since, construing the facts in her favor, the search did not reveal that she had any drugs on her person and she was behaving normally.  Deputy Smith responds that Mrs. Alexander's focus on whether she had drugs on her person is irrelevant since he was not involved in her arrest.  Thus, he concludes that he cannot be held liable for any alleged violation of her constitutional rights.

To prevail on a § 1983 claim, the plaintiff must show specific conduct by the officer that gives rise to the constitutional violation. *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002); *see also Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir. 1999) ("In order to state a cause of action under § 1983, [the plaintiff] must identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged.").  When a plaintiff alleges a claim of unlawful arrest, he must show that the police officer participated in the arrest. *See Brown v. City of Huntsville*, 608 F.3d 724, 736–37 (11th Cir. 2010).  An officer who is merely present at the scene, but who did not witness the behavior giving rise to the arrest or handcuff the individual will not be held liable for an alleged constitutional violation. *See id.* at 736–37.

The district court granted summary judgment for Deputy Smith on this claim because Mrs. Alexander "produced no evidence that [Deputy] Smith had any role in her arrest."  On appeal, Mrs. Alexander asserts that Deputy Smith participated in the arrest because: (1) she "understand[s] that Roland Smith and other claim they found baggies with methamphetamine"; (2) Deputy Smith placed her in the back seat of the police car; and (3) Deputy Smith "told [her]

that [she] was being arrested on some sort of drug related charges." However, the record is devoid of evidence that shows that Deputy Smith conducted the actual search of her purse, personally found the methamphetamine, or handcuffed her. In fact, he was not even present for any of these events. Furthermore, Mrs. Alexander offers no authority to support her claim that an officer is liable for an arrest even when he or she was not involved in the decision to arrest the individual; was not present during the initial encounter, questioning, search, and subsequent handcuffing of that individual; and did not transport the individual to the sheriff's office.[2] We agree with the district court that Deputy Smith did not participate in the arrest of Mrs. Alexander and, therefore, cannot be held liable for a constitutional violation. *See Brown*, 608 F.3d at 736–37; *Oliver*, 276 F.3d at 741.

## IV. Protective Sweep

The Alexanders claim that Deputy Smith violated their Fourth Amendment rights when he, along with other officers, conducted a warrantless search of their home. Deputy Smith counters that the search was a constitutionally permissible protective sweep, limited in time and scope. We agree.

Law enforcement officers may "perform cursory 'protective sweeps' of larger areas if they have articulable facts plus rational inferences that allow a reasonable officer to suspect that an individual dangerous to the officers is within the area to be searched." *United States v. Mata*, 517 F.3d 279, 285 (5th Cir. 2008) (citing *Maryland v. Buie*, 494 U.S. 325, 334 (1990)). While "[t]he mere presence of illegal drugs and weapons does not justify a protective

---

[2] Mrs. Alexander's affidavit claims that Deputy Smith placed her in the squad car; Deputy Smith's affidavit denies that. However, placing someone who has been arrested in a squad car after the arrest does not amount to an "arrest" within the meaning of the Fourth Amendment.

sweep[,] . . . a sweep is permissible where necessary to prevent the possible destruction of the drugs, especially where this danger is combined with reasonable concern for the safety of officers or civilians." *United States v. Watson*, 273 F.3d 599, 603 (5th Cir. 2001) (citations omitted).  The belief that an accomplice might be inside a house, even when the factual basis is disputable, supports a finding that the drugs might be destroyed or that there might be a threat to the officers' safety.  *Cf. id.*  Even when the arrest occurs outside a house, law enforcement officers may conduct a protective sweep inside that house when the officers have "reasonable grounds to believe there [are] people inside the house who pose[] a security risk."  *United States v. Mendez*, 431 F.3d 420, 428 (5th Cir. 2005).

Here, the district court agreed with Deputy Smith, finding that Deputy Smith possessed a reasonable belief based on specific and articulable facts that the home harbored an individual posing a danger to Deputy Smith or others. In support of this conclusion, the district court relied on the fact that Mr. Alexander's adult son, who was known to have a drug-related criminal history, lived in the residence with the Alexanders, but the son was unaccounted for at the time of the arrest. Additionally, there was a vehicle parked in the Alexanders' driveway that Deputy Smith believed belonged to an individual affiliated with drug use, and he was also unaccounted for.

The district court did not err in concluding that the search was a justifiable protective sweep.  While the Alexanders' emphasize that, viewing the facts in their favor, they were not found to be in possession of drugs at the time of the incident, they present no evidence that contradicts the numerous other facts suggesting that their home contained drugs and at least one other person.  Deputy Smith's decision to perform a protective sweep was based on his knowledge that: the Alexanders' had known drug affiliations; Mr. Alexander had just been arrested on an outstanding warrant relating to drugs;

Mrs. Alexander had just tested positive for drugs; and Mr. Alexander's adult and/or another individual affiliated with drug use was inside the Alexander residence. *Cf. Mata*, 517 F.3d at 285; *Mendez*, 431 F.3d at 428. Additionally, there is no evidence in the record that suggests that the protective sweep was not limited in time and scope. Therefore, Deputy Smith did not violate the Alexanders' constitutional rights by conducting a protective sweep of their home while waiting for the search warrant to be authorized.

## V.     Conclusion

For the foregoing reason, we AFFIRM the judgment of the district court.