# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 16, 2024

Lyle W. Cayce
Clerk

No. 23-40580

Rico Macias,

*Plaintiff—Appellant*,

*versus*

Halie Watkins,

*Defendant—Appellee*.

_____

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 6:22-CV-43

_____

Before Haynes, Willett, and Oldham, *Circuit Judges*.

Per Curiam:[*]

While responding to two 911 calls, one about a potential burglary and another about someone holding a gun, Officer Halie Watkins fired three shots at Rico Macias. The shots missed Macias and hit a wall. Macias sued Officer Watkins under 42 U.S.C. § 1983, alleging that she violated his Fourth Amendment rights. Officer Watkins moved for summary judgment on

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

qualified immunity grounds. The district court granted her motion, and Macias appealed. We AFFIRM.

I

In the early morning of October 7, 2020, Officer Watkins responded to two separate 911 calls, both of which originated from a duplex in Victoria, Texas. One came from Rosalia Flores, who was in one of the units with Macias. Flores and Macias had seen a man—who we now know was Nick Salazar—and a woman standing outside the duplex. Concerned that Salazar and the woman were attempting to break into the neighbor's unit, Flores called the police to report a potential burglary. The dispatcher asked whether anyone had a gun, and she said no. The other came from Salazar, who said he was checking on—not breaking into—his brother's adjacent unit.[1] Salazar called the police to tell them that the neighbor mistakenly thought that he was breaking into the unit and that the neighbor was outside with a gun. Officer Watkins was told the contents of both calls and dispatched to the scene.

Officer Watkins's body camera captured the rest of the incident. When Officer Watkins arrived at the duplex, she approached slowly from the back. Near the front of the building, she called out to the woman accompanying Salazar and, referring to a man out of sight, asked, "[H]ey ma'am, does he have a gun?" The woman did not respond. She instead turned to Salazar and, over unintelligible shouting in the background, said, "[C]ome on Nick, the cops are right there." Macias, who had been out of sight on the porch, stepped into view. Officer Watkins yelled "hey" twice and then said "let me see your" before Macias quickly raised his arms and

---

[1] Salazar explained that he was at the duplex because, about an hour earlier, he thought someone was breaking into his brother's unit. He called 911, and an officer reported to the unit and determined that no break in had occurred. The officer left the scene, but Salazar and his companion stayed behind.

No. 23-40580

aimed a light at her. The video does not clearly show the object in Macias's hands. Officer Watkins immediately fired three shots[2] at Macias but missed and hit the side of the duplex. Officer Watkins and Macias fell to the ground. Officer Watkins then returned to her vehicle and fled the scene. Macias stood up with his hands in the air and then walked inside his apartment.

Macias sued Officer Watkins under 42 U.S.C. § 1983, alleging that Officer Watkins violated his Fourth Amendment rights by seizing him without probable cause. Officer Watkins moved for summary judgment on qualified immunity grounds, construing Macias's complaint as alleging that Officer Watkins used excessive force. Macias responded to the motion and addressed both the unlawful-seizure and excessive-force claims. The district court also considered both, concluded that Officer Watkins was entitled to qualified immunity, and granted her motion for summary judgment.

Macias timely appealed.[3]

---

[2] The parties dispute whether two or three shots were fired. Officer Watkins says two, while Macias says three. The video evidence does not blatantly contradict either party, so we take the facts in the light most favorable to Macias and assume Officer Watkins fired three shots. *See Argueta v. Jaradi*, 86 F.4th 1084, 1090 (5th Cir. 2023); *Scott v. Harris*, 550 U.S. 372, 380–81 (2007).

[3] We conclude that both the excessive-force and unlawful-seizure claims are properly before us on appeal. Our well-settled rule that we do not consider claims raised for the first time by the plaintiff in response to a motion for summary judgment, *see Jackson v. Gautreaux*, 3 F.4th 182, 188–89 (5th Cir. 2021), is inapposite. Here, it was the defendant (Officer Watkins) who first construed the complaint as alleging an excessive-force claim in her motion for summary judgment, based on facts already alleged in the complaint. Both parties then argued the two claims on summary judgment, the district court ruled on both, and the parties argue both on appeal. *Cf. Plemer v. Parsons-Gilbane*, 713 F.2d 1127, 1132 n.5 (5th Cir. 1983) ("Although Plemer did not allege a *Gunther* cause of action in her complaint, the pretrial order, signed by counsel for both parties, contained a *Gunther* claim . . . . We believe that the *Gunther* issue was tried by the implied consent of the parties." (citing FED. R. CIV. P. 15(b); 5 C. WRIGHT AND A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1219 at 143 (1969))). We have no trouble concluding, then, that both

No. 23-40580

## II

"We review de novo the district court's grant of summary judgment based on qualified immunity." *Stidham v. Texas Comm'n on Priv. Sec.*, 418 F.3d 486, 490 (5th Cir. 2005) (italics omitted). Applying the same standard as the district court, we ask whether "the movant [has] show[n] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

To determine whether Officer Watkins is entitled to qualified immunity, we ask whether (1) Officer Watkins violated Macias's constitutional rights (2) that were clearly established at the time of the alleged misconduct. *See Salazar v. Molina*, 37 F.4th 278, 281 (5th Cir. 2022). Because Officer Watkins has pleaded the defense, the burden has shifted to Macias to rebut it. *See Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). Where the video "blatantly contradict[s]" either party's account, we "view[] the facts in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 380–81 (2007). Otherwise, we draw all inferences in Macias's favor. *See Brown*, 623 F.3d at 253.

We begin and end with qualified immunity's first prong.

## A

Start with Macias's claim that Officer Watkins used excessive force when she fired three shots in his direction.[4] To prove an excessive-force

_____

parties impliedly consented to arguing both claims. The district court passed on them below, and so do we.

[4] Officer Watkins does not argue on appeal that her use of deadly force was not a "seizure" within the Fourth Amendment, and we agree with the district court that it was. *See Tennessee v. Garner*, 471 U.S. 1, 7 (1985); *Torres v. Madrid*, 592 U.S. 306, 325 (2021) ("[T]he application of physical force to the body of the person with intent to restrain is a seizure even if the person does not submit and is not subdued."); *Dawes v. City of Dallas*,

4

claim under the Fourth Amendment, Macias must show "(1) an injury (2) which resulted directly and only from the use of force that was clearly excessive to the need and (3) the force used was objectively unreasonable." *Romero v. City of Grapevine, Tex.*, 888 F.3d 170, 176 (5th Cir. 2018) (citation omitted). Deadly force is clearly excessive and objectively unreasonable unless "the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others." *Id.* (quoting *Tennessee v. Garner*, 471 U.S. 1, 11 (1985)). Probable cause exists when, for example, the "officer reasonably believes that a suspect was attempting to use or reach for a weapon." *Valderas v. City of Lubbock*, 937 F.3d 384, 390 (5th Cir. 2019) (per curiam) (citing *Manis v. Lawson*, 585 F.3d 839, 844–45 (5th Cir. 2009) (collecting cases)).

"Excessive-force claims are necessarily fact-intensive, so we must examine the totality of the circumstances to determine whether an officer's actions were objectively unreasonable" and clearly excessive. *Roque v. Harvel*, 993 F.3d 325, 333 (5th Cir. 2021) (internal quotation marks and citation omitted). "We 'consider[] only the facts that were knowable to the defendant officer[]'" when the officer used force. *Garza v. Briones*, 943 F.3d 740, 745 (5th Cir. 2019) (quoting *White v. Pauly*, 580 U.S. 73, 77 (2017) (per curiam)). And we ask "whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force." *Roque*, 993 F.3d at 333 (citation omitted). "[W]e are careful to avoid 'second-guessing a police officer's assessment, made on the scene, of the danger presented by a particular situation.'" *Garza*, 943 F.3d at 745 (quoting *Ryburn v. Huff*, 565 U.S. 469, 477 (2012) (per curiam)).

---

No. 22-10876, 2024 WL 2268529, at *2 (5th Cir. May 20, 2024) (allowing a plaintiff to proceed on an excessive-force claim even though the officer's bullets did not strike him).

Macias contends that Officer Watkins is not entitled to qualified immunity because the parties dispute whether Officer Watkins saw the flashlight's pistol-grip handle. Whether Officer Watkins could see the pistol-grip and "say that the item in Macias's hand was a gun," he argues, is material to whether she had probable cause to believe that he posed a threat and could thus use deadly force.

We agree with Macias that he has raised a genuine factual dispute. Macias argues that Officer Watkins could not see the pistol-grip handle, while Officer Watkins argues that she saw "something big and black in his hands" that looked like a "handgun with a weapon mounted light." The video is unclear and does not blatantly contradict either party's account. *See Scott*, 550 U.S. at 380–81; *Argueta v. Jaradi*, 86 F.4th 1084, 1090 (5th Cir. 2023). But although this dispute is genuine, it is immaterial. Even taking the facts in the light most favorable to Macias—that Officer Watkins could not see the pistol-grip handle—Officer Watkins's use of deadly force was not excessive. *See Argueta*, 86 F.4th at 1090.

The uncontested facts show that Officer Watkins "reasonably believe[d] that [Macias] was attempting to use or reach for a weapon" and thus did not violate the Fourth Amendment by using deadly force. *See Valderas*, 937 F.3d at 390. When Officer Watkins arrived on the scene, she reasonably expected someone to be armed: She had been told that a potential burglary had occurred or was in progress and that someone may have a gun. And when she asked the woman standing near the duplex whether a man out of sight "ha[d] a gun," the woman did not answer. Rather than respond when she shouted "hey" twice, Macias abruptly raised his arms and pointed an object at her—a swift movement that was consistent with raising and pointing a gun. *Cf. Argueta*, 86 F.4th at 1092 (explaining that the suspect "clutching his right arm to his side as he fled at top speed was tantamount to" moving his arm to reach for a gun). Because we assume, as Macias argues,

that Officer Watkins could not see what he was holding, we must also assume that she could not see that he was holding *only* a flashlight. And, as a result, she could not dispel her reasonable belief, based on the circumstances known to her then, that he was armed. That Macias "was ultimately found to have been unarmed is immaterial." *See Romero*, 888 F.3d at 178. Accordingly, "judged in light of the circumstances confronting" her, Officer Watkins reasonably believed that Macias was attempting to use a gun. *See Manis*, 585 F.3d at 843. Officer Watkins therefore did not use excessive force.

## B

Based on our analysis above with respect to Macias's excessive-force claim, we can dispense with his concomitant unlawful-seizure claim in short order. That is because, according to Macias, Officer Watkins's use of deadly force effectuated the very seizure he calls unreasonable. We have already determined that Officer Watkins's use of force was reasonable under the circumstances. *See Romero*, 888 F.3d at 176. It follows, then, that Officer Watkins could not have unreasonably seized Macias. Officer Watkins, in other words, had probable cause to seize Macias using deadly force. That alone resolves both claims in favor of Officer Watkins.

## III

Officer Watkins is thus entitled to qualified immunity. Accordingly, we AFFIRM summary judgment in her favor.